IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DENNIS LEVECE MAYES, | § | |
| TDCJ No. 2062242, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:21-cv-1687-D-BN |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

A Dallas County jury convicted Petitioner Dennis Levace Mayes of aggravated

sexual assault of a child and sentenced him to life imprisonment. *See* Dkt. No. 12-5

at 153; *State v. Mayes*, F1253766-K (4th Jud. Dist. Ct., Dallas Cnty. Tex.,). His

conviction and sentence were affirmed on direct appeal, and the Texas Court of

Criminal Appeals (CCA) refused his petition for discretionary review (PDR). *Mayes

v. State*, No. 05-16-00490, 2017 WL 2255588 (Tex. App. – Dallas May 23, 2017, pet.

ref'd.). The United States Supreme Court denied his petition for writ of certiorari on

October 1, 2018. *See* Dkt. No. 12-20.

On August 18, 2019, Mayes signed his state habeas application; but TDCJ mail

logs indicate that it was received in the prison mailroom for filing on August 19, 2019.

*See* Dkt. No. 12-37 at 85 (state habeas application); Dkt. No. 15-1 at 39 (TDCJ mail

logs provided by the State in response to Mayes's habeas application). On May 26,

2021, the CCA denied the state habeas application "without written order on findings

of trial court without hearing and on the court's independent review of the record."
*Ex parte Mayes*, WR-24,164-02 (Tex. Crim. App. May 26, 2021); Dkt. No. 12-26.

On July 11, 2021, Mayes signed his application for federal habeas relief
pursuant to 28 U.S.C. § 2254 and supporting memorandum and declared – under
penalty of perjury – that these documents were placed into the prison mailing system
on that same date. *See* Dkt. No. 3 at 9; Dkt. No. 4 at 12. Subsequently-received mail
logs from the TDCJ show that the prison mailroom received Mayes's federal habeas
petition for filing on July 13, 2021. Dkt. No. 15-3 at 12.

The Court referred Mayes's federal habeas petition to the undersigned United
States magistrate judge for pretrial management under 28 U.S.C. § 636(b) pursuant
to a standing order of reference from Senior United States District Judge Sidney A.
Fitzwater. The State responded, arguing that the petition is untimely, or,
alternatively, meritless. Dkt. No. 15. Mayes filed a reply. Dkt. No. 18. He also filed a
motion to amend his petition [Dkt. No. 16] and a memorandum in support [Dkt. No.
17]. With leave of Court, the State filed a sur-reply to the motion to amend. Dkt. No.
20.

The undersigned now enters these findings of fact, conclusions of law, and
recommendation that the Court should: (1) dismiss Mayes's federal habeas
application as untimely, or alternatively, deny it on the merits; and (2) deny Mayes's
motion for leave to amend.

## Legal Standards and Analysis

Mayes's claims all involve the alleged ineffective assistance of his trial counsel ("IAC"). He claims his counsel was ineffective for:

> (1) Failing to object to evidence showing that Mayes was willing to accept a two-year plea offer;
>
> (2) Improperly advising Mayes that he could not request a lesser-included offense instruction;
>
> (3) Failing to object to evidence of unnotified extraneous bad acts with the victim and failing to request an election from the State as to which act of sexual assault it would rely upon for conviction;
>
> (4) Failing to object to evidence of a misdemeanor extraneous offense that was not sufficiently proven; and
>
> (5) Failing to impeach several witnesses regarding inconsistent outcry statements.

Dkt. No. 3 at 5-6; Dkt. No. 4 at 1-12.

The undersigned finds that Mayes's petition is untimely or, alternatively, substantively meritless.

## I.    Statute of Limitations

AEDPA establishes a one-year statute of limitations for federal habeas proceedings brought under 28 U.S.C. § 2254. *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996, Pub. L. 104-132, 110 Stat. 1214 (1996). The limitations period runs from the latest of:

> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

3

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The time during which a properly-filed application for state post-conviction or other collateral review is pending is excluded from the limitations period. *See id.* § 2244(d)(2).

The one-year limitations period is also subject to equitable tolling – "a discretionary doctrine that turns on the facts and circumstances of a particular case," *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), and only applies in "rare and exceptional circumstances," *United States v. Riggs,* 314 F.3d 796, 800 n.9 (5th Cir. 2002) (citing *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1998)). "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

Taking the second prong first, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009) (per curiam) (citation omitted). This "prong of the equitable tolling test is

4

met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [the litigant's] control." *Menominee Indian Tribe*, 577 U.S. at 257.[1] Further, even assuming an extraordinary circumstance exists, it must actually prevent the filing of a timely habeas petition; that is, the extraordinary circumstance must actually cause the late filing. *See*, *e.g.*, *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) (noting that the causal-connection requirement of the equitable tolling test prevents equitable tolling relief "if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstance").

As for diligence, "'[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.' What a petitioner did both before and after the extraordinary circumstances that prevented him from timely filing may indicate whether he was diligent overall." *Jackson v. Davis*, 933 F.3d 408, 411 (5th Cir. 2019) (quoting *Holland*, 560 U.S. at 653; footnote omitted).

And a showing of "actual innocence" can also overcome AEDPA's statute of limitations. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). But the actual innocence gateway is only available to a petitioner who presents "evidence of

---

[1] *See, e.g.*, *Farmer v. D&O Contractors*, 640 F. App'x 302, 307 (5th Cir. 2016) (per curiam) (holding that because "the FBI did not actually prevent Farmer or any other Plaintiff from filing suit" but instead "advised Farmer that filing suit would have been against the FBI's interest" and "that the RICO claims could be filed after the investigation concluded," "[a]ny obstacle to suit was ... the product of Farmer's mistaken reliance on the FBI, and a party's mistaken belief is not an extraordinary circumstance" (citation omitted)).

innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 401 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

That is, the petitioner's new, reliable evidence must be enough to persuade the Court that "'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* at 386 (quoting *Schlup*, 513 U.S. at 329).[2]

### A. Timeliness under AEDPA

As noted, pursuant to 28 U.S.C. § 2254(d)(1)(A), the AEDPA's statute of limitations begins to run – or accrues – "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."

---

[2] *See also Johnson v. Hargett*, 978 F.2d 855, 859-60 (5th Cir. 1992) ("The Supreme Court has made clear that the term 'actual innocence' means *factual*, as opposed to *legal*, innocence – 'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence, as the Court stated in *McCleskey [v. Zant*, 499 U.S. 467 (1991)], means that the person did not commit the crime." (footnotes omitted)); *Acker v. Davis*, 693 F. App'x 384, 392-93 (5th Cir 2017) (per curiam) ("Successful gateway claims of actual innocence are 'extremely rare,' and relief is available only in the 'extraordinary case' where there was 'manifest injustice.' *Schlup*, 513 U.S. at 324, 327. When considering a gateway claim of actual innocence, the district court must consider all of the evidence, 'old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.' *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks and citations omitted). 'Based on this total record, the court must make "a probabilistic determination about what reasonable, properly instructed jurors would do."' *Id.* (quoting *Schlup*, 513 U.S. at 329). 'The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors.' *Id.*" (citations modified)).

Here, the United States Supreme Court denied Mayes's petition for a writ of certiorari on October 1, 2018. *See* Dkt. No. 12-20. Thus, Mayes's conviction became final on that date, and, absent tolling, the limitations period expired a year later, on October 1, 2019. *See Roberts v. Cockrell*, 319 F.3d 690, 693-95 (5th Cir. 2003) (finality determined by expiration of time for filing further appeals); *see also Flanagan v. Johnson*, 154 F.3d 196, 202 (5th Cir. 1998) (holding that Rule 6(a) of the Federal Rules of Civil Procedure applies to the computation of the one-year limitation period in section 2244(d) of AEDPA).

Mayes did file a state habeas application, which, as noted, tolls the limitations period for the time that the application is pending. *See* 28 U.S.C. § 2244(d)(2). Although Mayes's state habeas application is dated August 18, 2019, it does not state that it was delivered to prison officials for mailing on that date. *See* Dkt. No. 12-37 at 85. And TDCJ mail logs reflect that Mayes's petition was received in the mailroom on August 19, 2019 [Dkt. No. 15-1 at 39], so, for purposes of the timeliness analysis, the August 19, 2019 date is considered the date that the petition was filed under the prison mail box rule. *See, e.g., O'Neal v. Cain*, 615 F.App'x 233, 234 (5th Cir. 2015) (upholding the district court's finding that the state habeas petition was submitted to prison officials for mailing on October 3, 2011, based on prison mailroom receipts showing that the documents were submitted to prison officials on that date despite the fact that the petition was dated September 30, 2011 because the fact "[t]hat [the] state court petition was dated September 30, 2011, does not serve as proof of when it was filed"); *see also Richards v. Thaler*, 710 F.3d 573, 578 (5th Cir. 2013) ("[U]nder

Texas law the pleadings of *pro se* inmates, including petitions for state post-conviction relief, are deemed filed at the time they are delivered to prison authorities, not at the time they are stamped by the clerk of the court." (citation omitted)).

Mayes's state habeas application was denied on May 26, 2021, so it tolled the AEDPA's limitations period for 647 days. *See Windland v. Quarterman*, 578 F.3d 314, 317 (5th Cir. 2009) (a state habeas application is "pending" for AEDPA's tolling purposes on the day it is filed through (and including) the day it is resolved). And, with the benefit of those 647 days of tolling, Mayes's federal habeas petition was due by Friday July 9, 2021.

The parties dispute whether Mayes gave his federal petition to the prison officials for mailing by that date. "The burden is on the *pro se* prisoner to show when his pleading was tendered to prison officials for delivery to the court." *United States v. Duran*, 934 F,3d 407, 412 (5th Cir. 2019); *see also Howard v. McKamie*, CIVIL ACTION NO. 9:17cv11, 2020 WL 702567, at *1, n.1 (E.D. Tex. Feb. 11, 2020) (same).

Initially, Mayes claimed – "under penalty of perjury" – that both his federal habeas petition and memorandum in support were executed and placed into the prison mailing system on Sunday July 11, 2021. *See* Dkt. No. 3 at 9; Dkt No. 4 at 12. And TDCJ mail logs from the period of July 11 to July 13, 2021, show that a document from Mayes addressed to the federal district court in Dallas was received in the prison mailroom on July 13, 2021, tending to confirm that Mayes's petition is untimely. *See* Dkt. No. 15-2 at 12.

But Mayes, in a "truthful affidavit" attached to his response to the State's

8

answer, claims for the first time that he actually placed his federal application into the prison mailbox on July 8, 2021, not July 11, 2021, as he originally swore to. Dkt. No. 18 at 13.

The undersigned finds that Mayes has failed to meet his burden of showing his pleading was tendered to prison officials on July 8, 2021, despite his "truthful affidavit." The July 8, 2021 date is contradicted by the TDCJ mail logs, and the Supreme Court has recognized that mail logs can "readily dispute a prisoner's assertion that he submitted his papers on a different date." *Houston v. Lack*, 487 U.S. 266, 275 (1988).

And courts in this circuit routinely credit prison mail logs over the unsubstantiated assertions of *pro se* habeas petitioners as to when pleadings are placed into the prison mailing system. *See*, *e.g.*, *Del Cid v. Lumpkin*, Civil No. SA-19-CA-0766-FB, 2021 WL 1738888, at *2-3 (W.D. Tex. May 3, 2021) (refusing to credit signed, unsworn declaration of *pro se* petitioner over TDCJ mail logs in a timeliness dispute where the petitioner failed to allege specific facts or any evidence that called the reliability of the mail logs into question and also failed to provide any independent evidence corroborating his unsworn declaration); *Green v. Davis*, Case No. 6:20-cv-336-JDM-KNM, 2021 WL 1141515, at *1 (E.D. Tex. Mar. 25, 2021) (crediting mail logs over unsworn declaration from inmate to find that the plaintiff's amended § 1983 complaint was untimely); *Benitez v. Davis*, No. CV H-18-2958, 2020 WL 1815865, at *7 (S.D. Tex. Apr. 9, 2020) (finding a habeas petitioner's unsupported affidavit insufficient to establish that his filing was timely when contradicted by mail logs);

9

*Gray v. Dretke*, No. 3:04-cv-2295, 2005 WL 1133860, at *3 (N.D. Tex. May 10, 2005) ("The best evidence of when petitioner deposited his writ in the prison mail system are the prison mail logs.").

Mayes fails to call the reliability of the mail logs into question or to provide any evidence contradicting them aside from the unsubstantiated allegations in his "truthful affidavit," which, as explained above, are insufficient.

Mayes argues that the mail logs only show the date on which authorities received his pleadings (July 13, 2021), as opposed to the date on which they were delivered to the prison mailbox (July 8, 2021). *See* Dkt. No. 18 at 1. But at least one court has rejected this argument as creating a "distinction without a difference" that is also inconsistent with the Supreme Court's admonition in *Houston* that mail logs can "'readily dispute a prisoner's assertion that he submitted his papers on a different date.'" *Del Cid*, 2021 WL 1738888, at *3 (quoting *Houston*, 487 U.S. at 275). The undersigned agrees that, under *Houston*, barring some showing that the mail logs are unreliable or wrong, courts are entitled to rely on those logs in assessing the application of the prisoner mailbox rule, and Mayes's argument would undermine that principle.

And the undersigned notes that Mayes previously swore that he put his federal petition into the prison mail system on July 11, 2021, not July 8, 2021, as he now claims. He provides no explanation for this change in dates or argument as to why the July 8, 2021 date should be credited over his prior sworn allegation that he put his pleadings into the prison mail system on July 11, 2021.

10

Mayes fails to show that he placed his federal habeas petition into the prison mailing system on July 8, 2021. Whether placed into the prison mailing system on July 13, 2021, as the TDCJ mail logs indicate, or on July 11, 2021, as he originally swore to, the petition is untimely under Section 2244(d)(1)(A).

And Mayes fails to show that any other AEDPA accrual date would apply.

He argues that Section 2244(d)(1)(B) should apply because "[a]ny untimeliness was caused by impediments created by State action." Dkt. No. 18 at 1. Specifically, he claims that, in April 2021, he was transferred to another unit while his state habeas petition was still pending and he did not receive his property – including a typewriter, trial transcripts, legal material files, and a completed section 2254 application ready to be mailed – until four months after the transfer, which was after the expiration of the federal limitations period. He argues that, "if not for the impediment of prison authorities illegally holding his property, including legal material files, for an extraordinary four months, during an extraordinary pandemic, Mayes would have filed the completed § 2254 application in his property within days of receiving the denial of his state application." Dkt. No. 18 at 3.

But Mayes does not establish the requisite causation – even assuming for argument's sake that there was some illegal state action. He does not show how his ability to file the petition on July 11 or 13th, 2021, as opposed to a few days earlier on July 9, 2021, was due to his inability to access certain legal materials. *See*, *e.g.*, *Barthelman v. Lumpkin*, Civil Action No. 7:21-00146, 2022 WL 877318, at *10 (S.D. Tex. Jan. 25, 2022) ("To invoke statutory tolling under § 2244(d)(1)(B), a prisoner

11

must show that: (1) he was subject to state action, (2) that violated the Constitution or federal law, and (3) prevented him filing a timely petition."; (citing *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003)). Because Mayes fails to show that the supposedly illegal state action caused his inability to file on time, Section 2244(d)(1)(B) is inapplicable.

## B. Equitable Tolling

Next, to the extent that Mayes seeks equitable tolling, the undersigned finds that doctrine inapplicable. Even assuming Mayes's temporary inability to access legal materials was an extraordinary circumstance for equitable tolling purposes, as explained above, Mayes does not explain how it prevented him from timely filing his federal petition – especially where he was able to file a petition a few days after the deadline and before he received his materials. *See*, *e.g.*, *Holland*, 560 U.S. at 649 (holding that "a [habeas] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing"; (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

And, as the State correctly notes, any argument for equitable tolling based on Mayes missing the deadline by a short period is also meritless because the Fifth Circuit has "focused on the reasons for missing the deadline rather than the magnitude of the tardiness." *Lookingbill v. Cockrell*, 293 F.3d 256, 264-65 (5th Cir. 2002) (citing *Fisher v. Johnson*, 174 F.3d 710, 715-16 (5th Cir. 1999)); *see also Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (refusing equitable tolling where the

12

petitioner missed deadline by four days); *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999) (two-weeks).

Mayes's petition is untimely under AEDPA, and he fails to show that equitable tolling is warranted. His petition should be dismissed with prejudice on that basis.

## II.    Merits Review Under 28 U.S.C. § 2254(d).

Even if Mayes's federal habeas petition was timely, it lacks substantive merit.

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the AEDPA, under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under the AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an

13

unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2254(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court

14

precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted)). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

15

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable

16

determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not

expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on [an] unreasonable factual determination…In other words, [habeas relief is inappropriate when], even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at 942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could

have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

Here, each of the claims that Mayes presented in his original federal petition involve the alleged ineffectiveness of his trial counsel.

The Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the

19

basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state

20

habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly

deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[3]

─────────────────────

[3] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22,

## A. Failure to Object to Evidence Concerning Mayes's Willingness to Accept a Two-Year Plea Offer (Ground One)

In his first IAC claim, Mayes complains that his trial counsel failed to object to evidence that he would accept a two-year plea offer if one was offered. *See* Dkt. No. 3 at 5; Dkt. No. 4 at 1-4. The undersigned understands this ground for relief to have two components. First, that Mayes's counsel did not object to evidence – specifically a letter and the recording of a jail phone call – showing that he would take a two-year plea offer if given the chance. And, second, that the prosecutor, during her cross examination of Mayes and during closing argument, acted as a witness by arguing that Mayes would have accepted a two-year plea offer, and that Mayes's counsel should have objected to that.

The CCA rejected this, and all of Mayes's other claims, on the merits. *See* Dkt. No. 12-26.

_____

15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

In its recommendation that this claim be rejected, the habeas trial court credited the affidavit of Mayes's trial counsel and found that, as to the failure to object to "'a statement made during plea discussions[,]' [t]rial counsel's affidavit states that [Mayes] opened the door to the line of questioning [by taking the stand.]" Dkt. No. 12-36 at 41.

Mayes argues that this is not accurate because the State introduced the evidence about his willingness to accept a plea deal during its case in chief.

But this Court is not limited to the reasoning supplied by the habeas trial court, as the CCA denied the claim on the findings of the trial court and on its own independent review of the record. Mayes must instead show that there was no reasonable basis for the state court to deny relief. *See Richter*, 562 U.S. at 98; *see also Gonzalez v. Lumpkin*, No. 1:20-cv-190, 2022 WL 509038, at *7-*8 (S.D. Tex. Jan. 28, 2022), *rec. accepted* 2022 WL 1063614 (S.D. Tex. Apr. 8, 2022) (finding that when the CCA denied a claim on its own independent review of the record in addition to the findings of the trial court, the petitioner had to show that there was no reasonable basis for the CCA to deny relief).

Mayes has not made that showing. Mayes argues that his counsel should have objected to the letter and jail phone call recording under Texas Rule of Evidence 410. That rule provides in pertinent part that, in a criminal case, evidence of the following is not admissible against the defendant who made the plea or was a participant in the plea discussions:

(1) A guilty plea that was later withdrawn;

(2) A nolo contendere plea that was later withdrawn;

(3) A statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or

(4) A statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty or nolo contendere plea or they resulted in a later-withdrawn guilty or nolo contendere plea.

None of those provisions apply here. The letter and phone call contained no statements made during plea proceedings. Nor did they contain statements made during plea discussions with an attorney for the State.

Instead, Mayes made statements about his willingness to accept a two-year plea offer to some of his family members, including the victim's mother. Dkt. No. 12-13 at 122; Dkt. No. 12-14 at 11-13. "[P]urported plea offers or other statements to anyone other than an attorney for the prosecution are not covered by Rule 410, regardless of what the defendant believed when he made the statement in questions." *Busby v. State*, No. 05-04-01719-CR, 2005 WL 3387751, at *3 (Tex. App. – Dallas Dec. 13, 2005, pet ref'd) (unpublished) (citing *Monreal v. State*, 947 S.W.2d 559, 565 (Tex. Crim. App. 1997); (further citations omitted)); *see also Beans v. State*, No. 05-12-00913-CR, 2014 WL 357340, at *2 (Tex. App. – Dallas Jan. 31, 2014) (unpublished) (finding that trial court did not err in admitting letter from appellant to his wife that discussed ongoing plea negotiations, including his belief that he might receive a five-year sentence if his wife would state that she did not fear for her life).

And so an objection based on Rule 410 would have been meritless. And counsel is not required to make meritless objections. *See*, *e.g.*, *Koch v. Puckett*, 907 F.2d 524,

25

527 (5th Cir. 1990) (citation omitted).

As for the second part of the claim, Mayes complains that the State's attorney cross examined him about his willingness to take a two-year deal and discussed that willingness during her closing argument, thereby acting as both a witness and advocate in violation of Mayes's right to due process. *See* Dkt. No. 4 at 3. In support, he references certain portions of the State's cross examination of him and its closing argument. *See* Dkt. No. 12-14 at 114-115, 118, 139 (pertinent portions of cross examination and closing argument).

"The advocate-witness rule prohibits an attorney from appearing as both a witness and an advocate in the same litigation." *U.S. v. Sayakhom*, 186 F.3d 928, 943 (9th Cir. 1999) (citing *United States v. Prantil*, 764 F.2d 548, 552-53 (9th Cir. 1985)). "The policies underlying this rule 'are related to the concern that jurors will be unduly influenced by the prestige and prominence of the prosecutor's office and will base their credibility determinations on improper factors.'" *Id.* (quoting *United States v. Edwards*, 154 F.3d 915, 921 (9th Cir. 1998)). And "[a] federal habeas petitioner's allegation that a state court conviction is invalid because of the violation of the advocate-witness rule is reviewed for a violation of due process in which the entire trial was rendered unfair." *Miller v. Whitley*, 20 F.3d 466 (5th Cir. 1994) (per curiam) (citations omitted).

The advocate-witness rule does not apply here. No attorney for the State testified as a witness at Mayes's trial concerning plea negotiations or anything else. Nor was such testimony offered through another witness or other evidence. Lawyers'

questions and arguments are not evidence. *See*, *e.g.*, *U.S. v. Lanier*, Criminal No. H-10-258-4, 2014 WL 2331659, at *3 (S.D. Tex. May 24, 2014) ("As an initial matter, questions asked by an attorney are not testimony and, as explained, the court instructed the jury that such questions are not evidence.").

And, even if the rule were applicable, Mayes does not show how his trial was "rendered unfair" by the State's questioning and/or closing argument. *See Miller*, 20 F.3d 466. As the habeas trial court noted, Mayes opened the door to this line of cross examination by taking the stand.

In sum, the CCA did not unreasonably apply *Strickland* in rejecting Mayes's first ground for relief.

### B. Failure to Give Correct Advice About Whether Mayes Could Request a Lesser-Included-Offense Instruction (Ground Two).

Mayes next complains that his trial counsel wrongly advised him that he could not request a lesser-included-offense jury charge, specifically indecency with a child. *See* Dkt. No. 4 at 4; *see also* Dkt. No. 3 at 5.

Even if Mayes could have received the lesser-included-offense instruction of indecency with a child, he has failed to show that his counsel was ineffective for not seeking it.

In an affidavit provided to the state habeas court, Mayes's counsel explained that, "since Mr. Mayes had a prior conviction for indecency by contact, any indecency conviction, even indecency by exposure, would have left him with an automatic life sentence. I preferred to require the State to clear the burden for aggravated sexual assault to obtain a conviction, and I think that judgment call proved to be effective

27

as the jury was hung for about six hours on this case, as I recall." Dkt. No. 12-36 at 37. And the state habeas court – in findings accepted by the CCA – implicitly credited this affidavit, citing it in support of its ultimate legal conclusion that Mayes was not deprived of the effective assistance of counsel. *See* Dkt. No. 12-36 at 42.

This determination of credibility is a factual finding that can only be overcome on federal habeas review through clear and convincing evidence, which Mayes fails to provide. *See*, *e.g.*, *Smith v. Quarterman*, 515 F.3d 392, 405 (5th Cir. 2008) ("The state habeas court found the affidavits of both attorneys to be credible on this issue, and Smith fails to present clear and convincing evidence to overcome the deference owed to the state court on this particular factual finding." (citing 28 U.S.C. § 2254(e)(1); *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005)).

Considering counsel's testimony, the CCA could have reasonably determined that her decision not to seek a lesser-included-offense instruction was a strategic one. And defense counsel's "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rhoades*, 852 F.3d at 434. (quoting *Strickland*, 466 U.S. at 690). This is especially the case with respect to the decision whether to seek a lesser-included-offense instruction. "Such a decision 'dwells in the region of tactics and strategy,' because the lesser-included offense instruction could 'increase the chance of conviction on some charge,' while foregoing it 'could le[ad] to a complete acquittal.'" *Mejia v. Davis*, 906 F.3d 307, 316 (5th Cir. 2018) (quoting *Adams v. Bertrand*, 453 F.3d 428, 435-36 (7th Cir. 2006); (brackets added)).

Mayes fails to show that his counsel's strategy – seeking a full acquittal for aggravated sexual assault as opposed to offering the jury another means of convicting him that would have carried the same sentence – was unreasonable or, at the least, that the state habeas court was unreasonable in concluding that it was reasonable. The CCA did not unreasonably apply *Strickland* in denying this ground for relief.

### C. Failure to Object to Extraneous Bad Acts or Offenses and to Request an Election from the State (Grounds Three and Four).

In his third claim for relief, Mayes claims his counsel was ineffective for not objecting to "unnotified extraneous bad acts" and for not "requesting [the] State to elect which offense it would rely on for conviction." Dkt. No. 3 at 6. More specifically, Mayes claims that he was never notified pursuant to Article 38.37 of the Texas Code of Criminal Procedure that the State would be offering evidence of extraneous bad acts with the victim other than what was alleged in the indictment. *See* Dkt. No. 4 at 6-7.

But that contention is inaccurate. The State twice provided notice – on July 9, 2015 and again on September 30, 2015 – that it might introduce evidence of bad acts with the victim other than those alleged in the indictment, occurring on or about January 1, 2012, that were part of a "continuing course of conduct" between Mayes and the victim. *See* Dkt. No. 12-5 at 31-33, 61-62.

Any objection based on the failure to provide the notice contemplated by Article 38.37 would have been meritless. And counsel is not required to make futile objections. *See, e.g.*, *Koch*, 907 F.2d 524, 527 (5th Cir. 1990) (citation omitted).

Mayes also contends that the notice of other extraneous acts with the victim

was deficient because the notice sent on September 30, 2015 stated that Mayes penetrated the victim's vagina, but the extraneous acts unveiled at trial did not involve penetration. *See* Dkt. No. 12-5 at 61. But the prior notice that the State sent on July 9, 2015 did provide notice that the State might introduce evidence of extraneous acts of Mayes involving contact. *See* Dkt. No. 12-5 at 32.

Mayes does not explain why this prior notice was insufficient pursuant to Article 38.37. He has not shown that any objection would have had merit and, in turn, that there was a reasonable probability that the result of the proceedings would have been different if his counsel made the objection. *See Strickland*, 466 U.S. at 694.

And the CCA was reasonable in rejecting the claim that Mayes's counsel was ineffective for not requesting an election from the State as to which act of sexual assault it would rely on for conviction.

Under Texas law, "[w]hen one particular act of sexual assault is alleged in the indictment, and more than one incident of that same act of sexual assault is shown by the evidence, 'the State must elect the act upon which it would rely for a conviction.' Once the State rests its case in chief, upon a timely request by the defense, the trial court must order the State to make an election." *Owings v. State*, 541 S.W.3d 144, 150 (Tex. Crim. App. 2017).

But foregoing a request for an election can be a reasonable strategic decision because, without an election, the defendant can urge a double jeopardy bar to any subsequent prosecution for any of the offenses presented at trial. *See Peterson v. State*, No. 01-02-00603-CR, 2003 WL 22681607, at *4 (Tex. App. – Houston [1st Dist.]

Nov. 13, 2003, pet. ref'd) (rejecting IAC claim premised upon the failure to seek an election because "without an election, appellant was free to urge a jeopardy bar to any subsequent prosecution for any of the offenses presented at trial"). So, here, the CCA could have reasonably concluded that the decision to forgo an election was reasonable strategy.

Even if it was not part of a reasonable strategy to fail to request an election from the State, Mayes fails to explain how he was prejudiced. The CCA has instead held that the failure to request an election is harmless if the four purposes behind the election requirement are still met. *See Owings*, 541 S.W. 3d at 150. Those purposes are: (1) to protect the accused from the introduction of extraneous offenses; (2) to minimize the risk that the jury might choose to convict, not because any particular crime was proven beyond a reasonable doubt, but because all of them together convinced the jury to convict the defendant; (3) to ensure unanimous verdicts; and (4) to give the defendant notice of the particular offense that the State intends to rely upon for prosecution and afford the defendant an opportunity to defend. *Id.*

As in *Owens*, those purposes were met here even without an election by the State.

To start, as in *Owens*, the extraneous offenses were already admissible to show Mayes's and the victim's state of mind, so Mayes was not entitled to protection from the introduction of evidence of extraneous offenses involving the victim. *Id.* at 151.

As for the concern that the jury might convict based on the cumulative nature

of the offenses without finding any of them had been proven beyond a reasonable doubt, the CCA has held that this purpose is met – as was the case here – when "[t]he 'multiple offenses' were all recounted by the same source – the child." *Dixon v. State*, 201 S.W.3d 731, 735 (Tex. Crim. App. 2006).

As for the third and fourth purposes, there was little danger here that some jurors may have relied on different acts of sexual abuse than others to establish guilt, leading to a non-unanimous verdict. Mayes's defense was that the abuse did not occur at all. The incidents of sexual abuse involved little variance; "either they occurred or they did not." *Owens*, 541 S.W.3d at 152. Put differently, there is little, if any, danger "here that some jurors might have believed that one incident occurred and another or others did not." *Id.* (citing *Phillips v. State*, 193 S.W.3d 904, 913 (Tex. Crim. App. 2006)). And finally, again as in *Owens*, there was no risk that Mayes was deprived of adequate notice of which offense to defend against because Mayes's defense was the same as to each incident the victim testified to – that no sexual abuse occurred at all.

Similarly, in his fourth ground for relief, Mayes argues that his counsel should have objected to evidence of his prior assault-by-contact charge – an "unadjudicated misdemeanor offense" that he claims is not one of the extraneous acts listed in Article 38.37. But Mayes misconstrues Article 38.37. The statute does allow for – in the trial of a defendant for sexual assault of child – extraneous evidence of assaultive offenses. *See* Tex. Code Crim. Proc. art. 38.37 (West 2012). There is no requirement that the prior offenses be felonies. *See*, *e.g.*, *Lamb v. State*, No. 05-97-01006-CR, 1999 WL 247139, at *1 (Tex. App. – Dallas Apr. 28, 1999, no pet.) (unpublished) (affirming trial

court's admission of extraneous unadjudicated misdemeanor offenses pursuant to Article 38.37).

Mayes also argues that the State did not prove beyond a reasonable double that he committed the assault-by-contact offense. But, even if this were correct, Mayes fails to explain, beyond speculation, how he was prejudiced. Even without evidence of the assault-by-contact offense, there was still the testimony from the victim that Mayes sexually assaulted her numerous times, as well as evidence of extraneous offenses against others besides the victim.

At bottom, the CCA did not unreasonably apply *Strickland* in rejecting Mayes's third and fourth grounds for habeas relief.

### D. <u>Failure to Impeach Outcry Witnesses (Ground Five)</u>

In his fifth ground for relief, Mayes complains that his counsel failed to impeach witnesses regarding inconsistent outcry statements that the victim gave. Dkt. No. 3 at 6; Dkt. No. 4 at 8-12. Specifically, Mayes asserts that the victim gave an outcry statement to her mother and a counselor that Mayes penetrated her, which was inconsistent with their trial testimony. *See* Dkt. No. 4 at 8-9.

But Mayes provided no evidence that the victim actually made these allegedly inconsistent outcry statements. He points only to the State's notice of extraneous offenses, which states that the State might introduce evidence of other acts involving penetration between Mayes and the victim. Dkt. No. 18 at 9.

The notice does not say where the allegations of penetration, if there were any, came from. It does not state that a specific witness like the victim's mother, the

counselor, or the victim herself made them.

Mayes cannot show prejudice based on such a speculative impeachment theory. *See*, *e.g.*, *D'Amatio v. United States*, 403 F.Supp.2d 361, 372 (D.N.J. 2005) ("Prejudice resulting from ineffective assistance of counsel cannot be based on mere speculation as to what witnesses might have said." (citing *Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001); *Lewis v. Mazurkieicz*, 915 F.2d 106, 113 (3d Cir. 1990)); *see also Carter v. Johnson*, 131 F.3d 452, 464 (5th Cir. 1997) (noting that "pure speculation" is insufficient to "overcome the strong presumption of competency and the high burden of actual prejudice required to prove ineffective assistance of counsel").

And the CCA did not unreasonably apply *Strickland* in rejecting Mayes's fifth ground for relief.

### E.  **Motion to Amend**

Mayes also filed a motion for leave to file a second amended petition and accompanying brief. *See* Dkt. Nos. 16, 17. Mayes seeks to amend his habeas petition to add another IAC claim – specifically, that his counsel was ineffective for failing to impeach the victim and her mother with allegedly prior inconsistent statements about whether the victim ever lived with Mayes. *See* Dkt. No. 17 at 1.

The Court should deny leave to amend because it would be futile, where the proposed claim is time-barred and meritless. *See*, *e.g.*, *Sixta v. Quarterman*, Civ. A. No. H-07-0118, 2007 WL 2746951, at *2 (S.D. Tex. Sept. 19, 2007) ("[U]nder Rule 15, this court must grant petitioner's motion to amend unless there is a substantial reason to deny leave to amend. Futility of amendment is one such reason." (citations

34

and internal quotation marks omitted)).

Initially, regarding timeliness, Mayes's federal habeas petition was due on or before July 9, 2021. But Mayes did not file his initial habeas petition until July 11, 2021 – at the earliest. Thus, this proposed amended claim is also time-barred.

But, even if the original petition were timely, the proposed amendment to it would not necessarily be. The issue would be whether the proposed amendment relates back to the original petition's filing date.

Federal Rule of Civil Procedure 15 provides, in pertinent part: "An amendment of a pleading relates back to the date of the original pleading when … the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Under *Mayle v. Felix*, 545 U.S. 644, 653-65 (2005), in the habeas context, claims in an amended petition will relate back to the date of the original petition "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend on events separate in 'both time and type' from the originally raised episodes." *Id.* at 645. And the Fifth Circuit has held that newly raised IAC claims do not automatically relate to those in an original petition:

> New claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision. Rather, we must look to whether [the petitioner's] new claim asserts "a new ground for relief supported by facts that differ in both time and type from those the original pleadings set forth."

*United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009) (quoting *Mayle*, 545 U.S. at 650).

Mayes's proposed sixth IAC ground for relief does not meet the relation back standard.

He asserted a failure-to-impeach-by-prior-inconsistent-statement IAC claim in his original petition. But the facts supporting that claim – that the victim supposedly made outcry statements that were inconsistent with trial testimony – are different than those supporting the proposed claim that Mayes's counsel should have impeached the victim and her mother with prior inconsistent statements the victim made about whether she ever lived with Mayes.

Thus, the claim does not relate back to the filing date of the original petition. And, as discussed above, Mayes has not shown that equitable tolling should apply, so the proposed sixth claim is time-barred.

But, even if the Court found the proposed claim timely, amendment would still be futile because the claim is substantively meritless.

The habeas trial court considered and rejected claim, finding that Mayes failed to support it with any facts. Mayes argues that that conclusion is wrong. He points specifically to the fact that his counsel – in her affidavit in the habeas proceedings – alerted the court to the fact that she did possess evidence supporting the existence of the prior inconsistent statements at issue.

But, as discussed above, this Court is not limited to the reasoning supplied by the trial court. Mayes must still show there was no reasonable basis for the state court to deny relief. *See Richter*, 562 U.S. at 98; *see also Gonzalez*, 2022 WL 509038, at *7-*8.

He fails to do that. In her affidavit, Mayes's trial counsel explained why she did not try to impeach the victim with prior inconsistent statements about whether she previously lived with Mayes:

> I chose not to attempt to impeach [the victim] with the statement because it was not relevant (just because [the victim] said that she was not molested by Mr. Mayes in 2007 does not undercut her testimony that she was molested by him in 2011) and not material in the case of her statement about living with Mr. Mayes in 2007 and saying she had never lived with him in 2012. Impeaching a child witness is a very delicate matter because in my experience the jury only has a very limited amount of goodwill that they are willing to extend to someone crossing a child. The potential for blowback from the jury is enormous if they feel that you are re-victimizing a child. I felt that it would be in Mr. Mayes's best interest to avoid collateral attacks on the child.

Dkt. No. 12-36 at 35-36.

"The decision whether to cross-examine a witness, and if so, how vigorously to challenge that witness' testimony, requires a quintessential exercise of professional judgment." *Ford v. Cockrell*, 315 F.Supp.2d 831, 859 (W.D. Tex. 2004). There is a strong presumption that counsel's decision to limit the scope of cross examination is reasonable trial strategy. *See id.*; *see also Dell v. Straub*, 194 F.Supp.2d 629, 651 (E.D. Mich. Feb. 28, 2002) ("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." (citing *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997)).

Here, the CCA could have reasonably concluded that that it was reasonable to refrain from impeaching the victim with the prior inconsistent statement given the difficulties with cross examining a child.

As for the victim's mother, she did not deny that Mayes at one point lived with

37

the victim. Dkt. No. 12-13 at 123. So there was no reason to impeach her with the victim's prior statement on this issue.

For these reasons, Mayes fails to show that the CCA unreasonably applied *Strickland* in rejecting this claim.

Mayes's motion to amend [Dkt. No. 16] should be denied as futile because his proposed IAC claim is time-barred or meritless.

## Recommendation

The Court should dismiss Mayes's application for a writ of habeas corpus with prejudice as untimely, or alternatively deny it on the merits. And the Court should deny Mayes's motion for leave to amend [Dkt. No. 16].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED.

DATED: December 8, 2022.

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE